UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

David D Battle Jr.

Petitioner,

V.

CITIBANK, N.A. ET AL; RAS LAVRAR, LLC; ARS NATIONAL SERVICES, INC.; MCCARTHY, BURGESS & WOLFF, INC.; EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; AND TRANS UNION LLC

Respondents

OCT 9 2026 PM12:25
FILED - USDC - FLMD - TPA

CASE NO. 8:26-CV-3079-TPB-AAS

**BILL IN EQUITY AND FORMAL COMPLAINT**
**Petitioner Requests Trial by the Court Sitting in Equity; Rights to Trial by Jury on Legal Claims Expressly Reserved**

## I. NATURE OF ACTION

1. Petitioner, DAVID D. BATTLE JR, brings this action against Respondents for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.; the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 et seq.; Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq; and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964. Petitioner further invokes the equitable jurisdiction



IFP

of this Court and declaratory relief, defamation doctrine, and the common law of unjust enrichment.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1692k(d) (FDCPA), 15 U.S.C. § 1681p (FCRA), and 18 U.S.C. § 1964(c) (RICO).

3. Supplemental jurisdiction over state law claims exists pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as all events giving rise to the claims occurred within this district, all Respondents conducted collection activity directed at Petitioner within this district, and Petitioner is domiciled in this district.

5. This Court's jurisdiction is not barred by the Rooker-Feldman doctrine. Rooker-Feldman applies only to cases brought by state court losers complaining of injuries caused by state court judgments. It does not bar independent federal claims that arise from the parties' conduct before, during, and after state court proceedings. Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). Petitioner does not seek appellate review of the state court judgment on its merits. Petitioner asserts independent federal statutory claims under 15 U.S.C. § 1692 et seq., 15 U.S.C. § 1681 et seq., and 18 U.S.C. § 1964 arising from Respondents' conduct that would be actionable regardless of the state court outcome. These

claims are independent of the state court judgment and fall outside the narrow scope of Rooker-Feldman. Nicholson v. Shafe, 558 F.3d 1266 (11th Cir. 2009).

## III. PARTIES

6. Petitioner, DAVID D. BATTLE, JR., is a private man domiciled in Brooksville, Florida. At all relevant times, Petitioner acted in a private, non-commercial capacity.

7. Respondent **CITIBANK, N.A.** ('**Citibank**') at 5800 S Corporate Pl Sioux Falls, SD 57108, is a national banking association operating in interstate commerce and the named plaintiff in state court case number 24003778SCAXMX. **Citibank** is a 'furnisher of information' as defined by 15 U.S.C. § 1681s-2.

8. Respondent **RAS LAVRAR, LLC** ('**Ras Lavrar**')at 1133 S University Dr, Plantation, FL 33324, is a law firm engaged in the collection of consumer debts on behalf of others and is a 'debt collector' as defined by 15 U.S.C. § 1692a(6).

9. Respondent **FLYNN LAVRAR, ESQ.**, Florida Bar No. 91596, is an attorney and upon information and belief a principal of Respondent **Ras LaVrar, LLC**, who signed or authorized filings directed at Petitioner in connection with case number 24003778SCAXMX. Under Heintz v. Jenkins, 514 U.S. 291 (1995), Respondent **Flynn LaVrar** is individually subject to FDCPA liability for each communication and filing made in connection with collection of the alleged debt.

10. Respondent **ELIAS LEONARD DSOUZA, ESQ.,** Florida Bar No. 399477, is an attorney employed by or associated with Respondent **Ras LaVrar, LLC**, who signed or authorized filings directed at Petitioner in connection with case number 24003778SCAXMX. Under Heintz v. Jenkins, 514 U.S. 291 (1995), Respondent **Dsouza** is individually subject to FDCPA liability for each communication and filing made in connection with collection of the alleged debt.

11. Respondent **DREW LINEN, ESQ.,** Florida Bar No. 121577, is an attorney employed by or associated with Respondent **Ras LaVrar, LLC**, who signed or authorized filings directed at Petitioner in connection with case number 24003778SCAXMX. Under Heintz v. Jenkins, 514 U.S. 291 (1995), Respondent **Linen** is individually subject to FDCPA liability for each communication and filing made in connection with collection of the alleged debt.

12. Respondent **SACHA C. DIXON, ESQ**., Florida Bar No. 1017790, is an attorney employed by or associated with Respondent **Ras LaVrar, LLC**, who signed or authorized filings directed at Petitioner in connection with case number 24003778SCAXMX. Under Heintz v. Jenkins, 514 U.S. 291 (1995), Respondent **Dixon** is individually subject to FDCPA liability for each communication and filing made in connection with collection of the alleged debt.

13. Respondent **CYDNEI NETTLES, ESQ.**, Florida Bar No. 1060227, is an attorney employed by or associated with Respondent **Ras LaVrar, LLC**, who signed or authorized filings directed at Petitioner in connection with case number 24003778SCAXMX. Under Heintz v. Jenkins, 514 U.S. 291 (1995), Respondent **Nettles** is individually subject to FDCPA liability for each communication and filing made in connection with collection of the alleged debt.

14. Respondent **JENNIFER K. KLEIN, ESQ.**, Florida Bar No. 89432, is an attorney employed by or associated with Respondent **Ras LaVrar, LLC**, who signed or authorized filings directed at Petitioner in connection with case number 24003778SCAXMX. Under Heintz v. Jenkins, 514 U.S. 291 (1995), Respondent **Klein** is individually subject to FDCPA liability for each communication and filing made in connection with collection of the alleged debt.

15. Respondent **ANDREW S. BRESALIER PEREZ, ESQ.**, Florida Bar No. 493279, is an attorney employed by or associated with Respondent **Ras LaVrar, LLC**, who signed or authorized filings directed at Petitioner in connection with case number 24003778SCAXMX. Under Heintz v. Jenkins, 514 U.S. 291 (1995), Respondent **Perez** is individually subject to FDCPA liability for each communication and filing made in connection with collection of the alleged debt.

16. Respondent **ARS NATIONAL SERVICES, Inc.** (‘**ARS**’)at 7954 Baymeadows Way Jacksonville, FL 32256, is a debt collection company engaged in the collection of consumer debts and is a 'debt collector' as defined by 15 U.S.C. § 1692a(6).

17. Respondent **MCCARTHY, BURGESS & WOLFF, INC.** (‘**McCarthy**’)at 26000 Cannon Road Cleveland, OH 44146, is a law firm engaged in debt collection and is a 'debt collector' as defined by 15 U.S.C. § 1692a(6).

18. Respondent **EQUIFAX INFORMATION SERVICES, LLC** ('**Equifax**') is headquartered in Georgia and does business in Florida through its registered agent. **Equifax** is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f).

19. Respondent **EXPERIAN INFORMATION SOLUTIONS, Inc.** ('**Experian**') is headquartered in California and does business in Florida through its registered agent. **Experian** is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f).

20. Respondent **TRANS UNION LLC** ('**TransUnion**') is headquartered in Illinois and does business in Florida through its registered agent. **TransUnion** is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f).

21. Each Respondent acted as an agent, alter ego, affiliate, co-conspirator, or joint venturer of the others, and each is jointly and severally liable for the acts, omissions, and damages alleged herein.

## IV. STATEMENT OF FACTS

### A. Debt Collection Action Without Standing, Evidence, or Valid Service

22. Respondent **Ras LaVrar, LLC and its individual attorneys of record**, filed a debt collection lawsuit against Petitioner in Hernando County Court, case number 24003778SCAXMX, purportedly on behalf of Respondent **Citibank, N.A.**, to collect an alleged credit card debt.

23. At no point during the underlying proceedings did **Ras LaVrar, LLC and its individual attorneys of record**, produce a board resolution, engagement authorization, agency agreement, or any verified documentation establishing that **Citibank**'s board of directors authorized **Ras LaVrar, LLC and its individual attorneys of record**, to institute this litigation on **Citibank**'s behalf.

24. **Ras LaVrar and its individual attorneys of record**, presented no evidence at trial or in support of any filing; no assignment documentation, no chain of evidence, no original contract, no verified accounting, and no proof of ownership of the alleged debt. The sole documents referenced were credit card statements and a cardholder agreement.

25. **Ras LaVrar** attempted service of process by delivering legal documents to Petitioner's father at a separate address where Petitioner does not dwell and has never dwelled. Petitioner's father is neither a co-dweller, a party to this action, nor an authorized agent of Petitioner. **Ras LaVrar and its individual attorneys of record** disclosed Petitioner's debt obligation without Petitioner's consent, revealing the existence of the debt to a third party

**B. FDCPA Violations by Collection Respondents**

26. Respondent **CitiBank** securitized the original debt. **Citibank**, **ARS National Services, Inc.**, and **Mccarthy, Burgess & Wolff, Inc.**, **Ras LaVrar and its individual attorneys of record** each communicated with Petitioner in connection with the same alleged **Citibank** debt. None of these entities produced an assignment agreement, bill of sale, or chain of evidence establishing which entity owned the alleged obligation or had authority to collect it at the time of each communication. These Respondents also didn't provide proof of who owns the servicing rights, the notice of the sale, pooling and servicing agreements, or the Forward Flow Purchase and Sale Agreement.

27. Between April 2024 and November 2024, Respondents **ARS National Services** and **McCarthy, Burgess & Wolff** sent Petitioner at least seven written communications in connection with the alleged debt, including: a letter from **ARS** in April 2024; letters from **ARS** dated June 3, 2024 and June 29, 2024; letters from both **ARS** and **McCarthy** dated August 26, 2024; a letter from **McCarthy** dated September 4, 2024; a letter from **McCarthy** dated October 9, 2024; and a letter from **Ras LaVrar** dated November 6, 2024.

28. The **McCarthy** letter dated October 9, 2024 acknowledged receipt of Petitioner's request for debt validation and Petitioner's cease and desist demand, and admitted that the only documents provided in response were credit card statements and a cardholder agreement. No accounting, chain of title, proof of ownership, or assignment documentation was produced.

29. Notwithstanding the pending cease and desist acknowledged in the October 9, 2024 **McCarthy** letter, **Ras LaVrar** sent Petitioner an additional written communication dated November 6, 2024, filed the underlying civil action on December 24, 2024, and obtained a Default Final Judgment on October 15, 2025, nearly ten months after filing. The Default Final Judgment was entered without Petitioner having been properly served, without any evidence presented, and without any hearing at which Petitioner had a meaningful opportunity to be heard.

30. Respondent **Citibank, N.A.** transmitted solicitation letters to Petitioner offering new credit card products during the same period in which it maintained the collection action at issue.

31. Petitioner filed complaints with the Consumer Financial Protection Bureau regarding the collection conduct and credit reporting violations at issue herein. Respondents received notice of those complaints through the CFPB's complaint portal and denied the allegations.

32. As a direct result of Respondents' collection activity and the threats of asset seizure and wage garnishment communicated in connection with the underlying proceedings, a family member declined to transfer ownership of real property to Petitioner.

**C. FCRA Violations — Inaccurate Credit Reporting**

33. The **Citibank** personal credit card tradeline reported across Petitioner's **TransUnion**, **Equifax**, and **Experian** credit reports contains the following material inaccuracies:

**Transunion Reporting**:

a. The February 17, 2024 **TransUnion** report shows the account closed on October 24, 2023 with the balance showing blank in the payment grid.

b. The February 17, 2024 **TransUnion** report said the account was still in good standing in September 2023.

c. The payment grid also shows that the card didn't close until December 2023.

d. In fact, the balance history in the payment grid is blank from February 2023 to November 2023. First balance is reported in December 2023 as $4074.

e. The balance increased to $4,144 even though the card was already closed.

f. The credit limit was $3,900 and the high balance was $6,019.

g. The Date of First Delinquency was missing or omitted from the reporting;

h. The March 22, 2024 **TransUnion** Report showed the **Citibank** account was "Reinserted" while still showing inaccurate information.

i. It showed "N/R" for February 2024 conflicting with the other reports during the same period.

j. The May 22, 2024 **TransUnion** report showed that after the Petitioner's dispute the accounts were "Verified As Accurate".

k. The inaccurate data remained on the report, only the balance increased to $4,282 with a credit limit of $3,900 and a high balance of $6,019;

l. The December 12, 2024 **TransUnion** Report showed the **Citibank** had a past due amount that increased every month starting in April 2024 at $854 to $1,155 in November 2024, yet the balance stayed at $4,282 the whole time.

m. December 2023 to March 2024 the payment grid was blank;

**Equifax Reporting**:

n. On the May 15, 2024 **Equifax** report the "Date of First Delinquency" was August 2023.

o. The February 17, 2025 **Equifax** report shows the account closed on October 01, 2023 with a charge off amount of $0 and the "Date of First Delinquency" was 09/01/2023.

p. The **Equifax** balance being reported was $4,282, which doesn't align with the **TransUnion** balance.

q. The **Equifax** high balance was reported as $0 as well.

r. The June 23, 2023 **Equifax** report had the credit limit at $4,140.

**Experian Reporting**:

s. The March 25, 2024 **Experian** report shows the account was in good standing in September 2023 contrary to the **Equifax** report during the same period.

t. According to **Experian** the account was closed in December 2023 with a balance of $4,074, a credit limit of $3,900, and a high balance of $6,019.

u. However, the underneath the payment grid the **Experian** report shows five other credit limit/high balance figures ranging from $3,900 to $5,400.

v. The **Experian** payment history shows the account didn't close until March 2024.

w. On the April 30, 2024 **Experian** report **Citibank** reported the information on the report as accurate after the dispute.

34. Petitioner submitted identity theft reports to **TransUnion** in January 2024. **TransUnion** confirmed receipt of those reports. Notwithstanding receipt of the identity theft reports, **TransUnion** verified the disputed **Citibank** information as accurate in February 2024, reinserted the disputed information in March 2024, and verified the disputed information as accurate again in May 2024, without conducting a reasonable reinvestigation.

35. On Petitioner's **Equifax** report, the **Citibank** tradeline was removed and subsequently reinserted with a charge-off status in February 2025. **Equifax** also verified the disputed **Citibank** information as accurate in May 2024 following Petitioner's dispute.

36. Petitioner maintained active security freezes on all three credit reports. Notwithstanding those freezes, the following unauthorized inquiries were made without Petitioner's knowledge or consent:

a. Inquiries from **Citibank** appearing on the **Equifax** report in May 2023, June 2023; January 2024; March 2024; August 2, 2024; July 23, 2024; June 14, 2025; June 10, 2025;

b. An inquiry from **McCarthy, Burgess & Wolff** appearing on the **TransUnion** report on August 23, 2023;

c. Promotional inquiries from Capital One appearing on Petitioner's **Equifax** report were made in connection with prescreened credit offers transmitted to Petitioner notwithstanding Petitioner's active security freeze. Petitioner subsequently applied for credit with Capital One and was denied.

d. An inquiry from **Ras LaVrar, LLC** appearing on the **Experian** report in February 2025.

e. Petitioner discovered that the CRA the lender sent their inquiry request to is irrelevant because the Petitioner's private data is being shared between all three CRAs simultaneously.

f. Petitioner discovered that the CRA the lender sent their inquiry request to is irrelevant because the Petitioner's private data is being shared between all three CRAs simultaneously.

37. Petitioner has received a continuing volume of unsolicited credit solicitation letters from third parties as a direct consequence of all the CRAs sharing or selling Petitioner's information despite active freezes and opt-out elections.

38. Petitioner's credit reports reflect that the consumer reporting agencies submitted inquiries to each other's databases without Petitioner's authorization. The March 25, 2024 **Experian** report reflects five inquiries from **TransUnion** Interactive in March, April, June, July, and August 2024. The April 8, 2024 **Experian** report reflects nine additional inquiries from **TransUnion**.

39. The March 17, 2024 **Equifax** report reflects a **TransUnion Interactive** inquiry from February 2024, and subsequent **Equifax** reports reflect additional **TransUnion** inquiries on July 15, 2024. The April 1, 2025 **TransUnion** report reflects 34 inquiries from **Experian** operating under the aliases "ConsumerInfo" and "ConsumerInfo.com," each designated with a permissible purpose of "Written Authorization." Petitioner provided no such written authorization.

40. As a direct and proximate result of the inaccurate negative information furnished and maintained by Respondents on Petitioner's **TransUnion** consumer credit report, Petitioner suffered the following documented credit denials from BMW Financial Services: applications submitted on March 2, 2026 and March 4, 2026 could not be processed due to an active **TransUnion** security freeze; applications submitted on March 29, 2026, after Petitioner temporarily lifted the freeze for 24 hours to permit processing, were denied citing excessive credit utilization, excessive debt activity, and failure to meet minimum credit requirements.

41. Petitioner was denied by US Bank on February 22, 2025, on a personal application and a business card application, with the denial citing information

provided by **TransUnion** including serious delinquency and public records or collection filed, recency of delinquency, and length of time revolving accounts have been established. The length of time factor cited by US Bank is contradicted by the fact that Petitioner's revolving accounts were opened well before 2025, suggesting the denial reason was generated from inaccurate or incomplete data furnished by **TransUnion** rather than Petitioner's actual credit history.

42. As a direct result of the inaccurate negative information reported by Respondents and maintained on Petitioner's credit reports, Petitioner was denied credit by BMW Financial Services and US Bank.

## V. CAUSES OF ACTION

**COUNT I — VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692 et seq. (Against Respondents Ras LaVrar, LLC; ARS National Services, Inc.; Mccarthy, Burgess & Wolff, Inc.)**

43. Petitioner re-alleges paragraphs 22 through 34 as if fully set forth herein.

44. Respondents **Ras LaVrar, LLC** and its individual attorneys, **ARS National Services, Inc.**, and **Mccarthy, Burgess & Wolff, Inc**. are each 'debt collectors' within the meaning of 15 U.S.C. § 1692a(6).

45. Respondent **Ras LaVrar, LLC and its individual attorneys of record** are a law firm that identified themselves as a debt collectors in their written communications to Petitioner while simultaneously acting as legal counsel for **Citibank** in the underlying collection proceeding. Under Heintz v. Jenkins, 514

U.S. 291 (1995), attorneys who regularly engage in consumer debt collection are "debt collectors" subject to the full requirements of the FDCPA regardless of whether they are acting in their litigation capacity. Respondent's dual role as collection attorney and debt collector subjects it to personal liability under the FDCPA for each communication made in connection with collection of the alleged debt.

46. Respondent **Ras LaVrar, LLC** and its individual attorneys, violated 15 U.S.C. § 1692b(2) by revealing to Petitioner's father the existence of the alleged debt owed to **Citibank**, a third party disclosure made without authorization and in contravention of Petitioner's privacy rights.

47. Respondent **Ras LaVrar, LLC** and its individual attorneys, violated 15 U.S.C. § 1692c(b) by communicating with Petitioner's father, a third party who had not consented to receive such communications in connection with the collection of the alleged debt.

48. **Ras LaVrar, ARS,** and **Mccarthy** violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, and abuse Petitioner, including pursuit of collection on an unvalidated debt through judicial proceedings.

49. **Ras LaVrar, LLC** and its individual attorneys violated 15 U.S.C. § 1692e by filing a lawsuit and making representations concerning the alleged debt without verified standing, board-authorized agency, or evidentiary basis, constituting false and

misleading representations regarding the character and legal status of the alleged debt.

50. **Ras LaVrar, LLC** and its individual attorneys violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect the alleged debt, including obtaining judgment through defective service and without evidentiary support.

51. **Ras LaVrar, ARS,** and **Mccarthy** violated 15 U.S.C. § 1692g by failing to provide adequate validation of the alleged debt upon Petitioner's timely request, producing only credit card statements in lieu of the original contract, chain of title, and verified accounting.

52. WHEREFORE, Petitioner seeks actual damages, statutory damages of $1,000.00 per violation per Respondent, declaratory relief, attorneys' fees and costs pursuant to 15 U.S.C. § 1692k.

**COUNT II — VIOLATIONS OF THE FCRA BY FURNISHER, 15 U.S.C. § 1681s-2 (Against Respondent Citibank, N.A.)**

53. Petitioner re-alleges paragraphs 35 through 44 as if fully set forth herein.

54. **Citibank** is a 'furnisher of information' within the meaning of 15 U.S.C. § 1681s-2 and owes duties to Petitioner to furnish accurate information and to conduct reasonable investigations of disputed information.

55. The **Citibank** tradeline reported across Petitioner's **TransUnion**, **Equifax**, and **Experian** credit reports contains the following material inaccuracies, each

independently constituting a violation of 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681s-2:

a. The February 17, 2024 **TransUnion** report reflects the account closed October 24, 2023, yet the payment grid shows the first balance appearing in December 2023 at $4,074, with all prior months blank, contradicting the stated closure date.

b. The balance increased to $4,144 in January 2024 despite the account being closed, then continued increasing to $4,215 on the March 22, 2024 **TransUnion** report and $4,282 on the May 22, 2024 **TransUnion** report. A balance that increases on a closed account without disclosure of the basis for the increase is inherently inaccurate and misleading;

c. The credit limit was $3,900 and the reported high balance was $6,019, a figure exceeding the credit limit by $2,119 with no explanation.

d. The March 22, 2024 **TransUnion** report shows the **Citibank** account was reinserted while continuing to reflect inaccurate information, including a notation of "N/R" for February 2024 that conflicts with reporting on other bureaus during the same period.

e. The May 22, 2024 **TransUnion** report reflects that following Petitioner's dispute, the account was verified as accurate while the inaccurate data remained, with the balance increasing to $4,282 against a credit limit of $3,900 and a reported high balance of $6,019;

f. The December 12, 2024 **TransUnion** report reflects a past due amount that increased every month from April 2024 through November 2024, rising from $854 to $1,155, while the balance remained static at $4,282 throughout the same period.

g. The payment grid reflects no data for December 2023 through March 2024. A past due amount that increases month over month while the principal balance remains unchanged is internally inconsistent and constitutes inaccurate reporting;

h. The Date of First Delinquency is reported inconsistently across all three bureaus. The May 15, 2024 **Equifax** report reflects August 2023 as the Date of First Delinquency. The February 17, 2025 **Equifax** report reflects September 1, 2023 as the Date of First Delinquency, two different dates for the same event on the same bureau across two reporting periods.

i. The February 17, 2024 **TransUnion** report reflects the account was still in good standing in September 2023, directly contradicting **Equifax**'s reported Date of First Delinquency of August or September 2023.

j. **Experian** and **TransUnion** omitted the Date of First Delinquency altogether. Accurate and consistent reporting of the Date of First Delinquency is required under 15 U.S.C. § 1681s-2(a)(5) and 15 U.S.C. § 1681c(c);

k. The account closure date is reported inconsistently across all three bureaus. The February 17, 2025 **Equifax** report reflects a closure date of October 1, 2023, with a reported charge-off amount of $0 and a high balance of $0, both of which are inaccurate given the reported balance of $4,282.

l. The June 23, 2023 **Equifax** report reflected a credit limit of $4,140, which conflicts with the $3,900 credit limit reported on all other bureau reports.

m. The February 17, 2024 **TransUnion** report reflects a closure date of October 24, 2023, while the payment grid reflects activity continuing through December 2023.

n. The March 25, 2024 **Experian** report reflects a closure date of December 2023 and shows five different credit limit and high balance figures beneath the payment grid ranging from $3,900 to $5,400, while the payment history reflects the account did not close until March 2024. These materially different closure dates and conflicting credit limit figures across three bureaus reflect a failure by **Citibank** to furnish accurate information;

o. The March 25, 2024 **Experian** report reflects the account was in good standing in September 2023, directly contradicting the **Equifax** reporting for the same period.

p. **Experian** reported the account closed in December 2023 with a balance of $4,074, a credit limit of $3,900, and a high balance of $6,019. The April 30, 2024 **Experian** report reflects that **Citibank** reported the disputed

information as accurate following Petitioner's dispute, notwithstanding the material inconsistencies identified herein;

q. The February 17, 2025 **Equifax** report reflects the account with a charge-off amount of $0 and a high balance of $0, both of which directly contradict the balance of $4,282 and high balance of $6,019 reported on other bureaus for the same account during overlapping periods. The simultaneous reporting of a $0 charge-off amount and a $4,282 outstanding balance on the same account at the same time is facially irreconcilable and constitutes inaccurate reporting.

56. Taken together, the inaccuracies identified above demonstrate that **Citibank** failed to fulfill its duty to furnish complete and accurate information under 15 U.S.C. § 1681s-2(a). The inconsistencies across bureaus and across reporting periods for the same account further establish that no reasonable reinvestigation was conducted by **Citibank** following Petitioner's disputes, in violation of 15 U.S.C. § 1681s-2(b) and the standard established in Johnson v. MBNA America Bank, N.A., 357 F.3d 426 (4th Cir. 2004).

57. Petitioner received the following credit denials as a direct result of the inaccurate negative information furnished and maintained by Respondents: four denial letters from BMW Financial Services in March 2026, citing excessive credit utilization, excessive debt activity, and failure to meet minimum credit requirements; and denials from US Bank on February 22, 2025 on both a personal and business card application, citing serious delinquency, recency of delinquency,

and length of time revolving accounts have been established. True and correct copies of these denial letters are attached as exhibits.

58. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondent **Citibank, N.A.**, and award Petitioner actual damages, statutory damages pursuant to 15 U.S.C. § 1681n, punitive damages for willful noncompliance, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3)

**COUNT III — VIOLATIONS OF THE FCRA BY CONSUMER REPORTING AGENCIES, 15 U.S.C. § 1681i (Against Respondents TransUnion, LLC; Equifax Information Services, LLC; Experian Information Solutions, Inc.)**

59. Petitioner re-alleges paragraphs 35 through 44 as if fully set forth herein.

60. Each CRA Respondent is a 'consumer reporting agency' within the meaning of 15 U.S.C. § 1681a(f).

61. Following receipt of Petitioner's disputes and disputes submitted by authorized third parties acting on Petitioner's behalf, each CRA was required to conduct a reasonable reinvestigation of the disputed information within thirty days pursuant to 15 U.S.C. § 1681i(a).

62. Each CRA failed to conduct a reasonable reinvestigation. Rather than independently verifying the disputed information, each CRA parroted the furnisher's records without review of supporting documentation, in direct

contravention of Johnson v. MBNA America Bank, N.A., 357 F.3d 426 (4th Cir. 2004).

63. Each CRA continued to report materially inaccurate information including balance increases post-closing, missing and inconsistent Date of First Delinquency data with **Experian** and **TransUnion,** while **Equifax's** Date of First Delinquency data was inconsistent on different reports. Each CRA exhibited blank and contradictory payment history grids, and blank or inconsistent high credit limit fields, in violation of 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i.

64. Each CRA submitted inquiries to the other CRAs' databases without Petitioner's authorization, notwithstanding active security freezes.

65. The March 25, 2024 **Experian** report reflects five inquiries from **TransUnion** Interactive;

66. The April 8, 2024 **Experian** report reflects nine additional **TransUnion** inquiries.

67. The April 1, 2025 **TransUnion** report reflects 34 inquiries from **Experian** operating under the aliases "ConsumerInfo" and "ConsumerInfo.com," each designated as authorized by written consent Petitioner never provided.

68. Each such cross-bureau inquiry through a frozen report constitutes a willful violation of 15 U.S.C. § 1681b and willful noncompliance under 15 U.S.C. § 1681n, for which each CRA is independently liable.

69. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents **TransUnion, LLC**, Equifax Information Services, LLC, and

Experian Information Solutions, Inc., and award Petitioner actual damages, statutory damages pursuant to 15 U.S.C. § 1681n, punitive damages for willful noncompliance, an order compelling deletion of all inaccurate and unverified information, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

**COUNT IV — RICO VIOLATIONS, 18 U.S.C. §§ 1962 & 1964 (Against Respondents Citibank, N.A.; Ras LaVrar, LLC and its individual attorneys of record; ARS National Services, Inc.; Mccarthy, Burgess & Wolff, Inc.)**

70. Petitioner re-alleges paragraphs 22 through 44 as if fully set forth herein.

71. Respondents **Citibank, N.A.; Ras LaVrar, LLC and its individual attorneys of record; ARS National Services, Inc.; Mccarthy, Burgess & Wolff, Inc** constitute an 'enterprise' within the meaning of 18 U.S.C. § 1961(4), operating as an association-in-fact engaged in a pattern of racketeering activity directed at Petitioner and, upon information and belief, other similarly situated consumers.

72. The enterprise's pattern of racketeering activity includes the following predicate acts under 18 U.S.C. § 1341 (mail fraud):

    a. The mailing of collection letters and legal filings by **Ras LaVrar, LLC and its individual attorneys of record**, asserting the right to collect a debt without verified chain of title, constituting false representations transmitted through the United States Mail;

b. The mailing of a collection demand letters by **ARS National Services, Inc**. and **Mccarthy, Burgess & Wolff, Inc**. while never producing chain of title, assignment documentation, or authenticated proof of ownership, constituting false representations transmitted through the United States Mail.

c. The institution of a lawsuit by **Ras LaVrar, LLC** through the courts of this state using mail and wire communications to advance false claims, enforce fraudulent representations, and coerce payment of unverified obligations.

73. The pattern of racketeering activity has continued across multiple collection actions by **Citibank, N.A.**, **Ras LaVrar, LLC and its individual attorneys of record**, **ARS National Services, Inc**., and **Mccarthy, Burgess & Wolff, Inc**, satisfying the continuity requirement under H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989).

74. The filing of the underlying civil action by **Ras LaVrar, LLC** on December 24, 2024, a federal holiday, following acknowledgment of Petitioner's cease and desist demand on October 9, 2024, constitutes an additional predicate act of mail fraud under 18 U.S.C. § 1341, using the legal process and United States Mail as mechanisms to coerce payment of an unverified obligation at a time calculated to prevent Petitioner from responding.

75. As a direct and proximate result of the RICO violations, Petitioner has suffered injury to business and property entitling Petitioner to treble damages, attorney's fees, and costs pursuant to 18 U.S.C. § 1964(c).

**76.** WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents **Citibank, N.A.**, **Ras LaVrar, LLC and its individual attorneys of record**, **ARS National Services, Inc.**, and **Mccarthy, Burgess & Wolff, Inc.**, and award Petitioner treble damages pursuant to 18 U.S.C. § 1964(c), and reasonable attorney's fees and costs pursuant to 18 U.S.C. § 1964(c).

COUNT V — INVASION OF PRIVACY **(Against Respondents Ras LaVrar, LLC and its individual attorneys of record)**

77. Petitioner re-alleges paragraphs 22 through 26 as if fully set forth herein.

78. Respondent **Ras LaVrar and its individual attorneys of record**, service of legal process upon Petitioner's father at a separate address, revealing the existence of a debt collection lawsuit to a non-party family member without Petitioner's authorization, constitutes an invasion of Petitioner's right to privacy protected by Article I, Section 23 of the Florida Constitution.

79. Respondent **Ras LaVrar's and its individual attorneys of record** communication with Petitioner's father regarding the alleged debt further constitutes public disclosure of private financial information, intrusion upon Petitioner's private affairs, and false light portrayal of Petitioner's financial status. These acts caused

Petitioner emotional distress, reputational harm, and damage to family relationships.

80. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondent **Ras LaVrar, LLC and its individual attorneys of record** and award Petitioner actual damages and punitive damages for the invasion of Petitioner's privacy rights under Article I, Section 23 of the Florida Constitution, and such further relief as the Court deems just and proper.

**COUNT VI — DEFAMATION PER SE (Against Respondents Citibank, N.A.; TransUnion, LLC; Equifax Information Services, LLC; Experian Information Solutions, Inc.)**

81. Petitioner re-alleges paragraphs 35 through 44 as if fully set forth herein.

82. **Citibank** furnished materially false and unverified negative credit information to **Experian**, **Equifax**, **Transunion**, third-party creditors, and counterparties knowing Petitioner had disputed its accuracy, without conducting verification, and in the absence of any authenticated documentation supporting the reported information. **Experian**, **Equifax**, and **Transunion** published that data to the Petitioner's credit reports and supplied that inaccurate data to third parties. These publications directly impute financial irresponsibility and dishonesty to Petitioner and constitute defamation per se under Florida common law, impairing Petitioner's ability to conduct business and participate in the economy. **Citibank**

was supposed to protect the Petitioner's information, not sell it to the highest bidder

83. As a direct result, Petitioner suffered damage to creditworthiness, denial of access to financing, reputational harm, and loss of economic opportunity, for which Petitioner seeks actual and punitive damages.

84. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents **Citibank, N.A.**, **TransUnion**, LLC, **Equifax** Information **Services, LLC**, and **Experian Information Solutions, Inc**., and award Petitioner actual damages, punitive damages for willful publication of false information, and an order compelling immediate correction and deletion of all defamatory reporting, and such further relief as the Court deems just and proper.

## COUNT VII — UNJUST ENRICHMENT AND EQUITABLE RESCISSION (Against Respondent Citibank, N.A.)

85. Petitioner re-alleges paragraphs 22 through 34 as if fully set forth herein.

86. To the extent any obligation exists or existed between Petitioner and **Citibank**, that obligation has not been authenticated, verified, or supported by a chain of title establishing **Citibank**'s present ownership and right to collect. **Citibank** refused to produce the original signed contract, original signed application, chain of title, authenticated accounting, or any proof of consideration given on their part upon Petitioner's request.

87. The entry of judgment against Petitioner and any enforcement thereof without verified standing, without a valid original contract, without an authenticated accounting constitutes unjust enrichment at Petitioner's expense.

88. In equity, Petitioner seeks rescission of any collection obligation arising from unverified claims, disgorgement of any amounts collected or enforced, and restoration to the position Petitioner would have occupied absent Respondents' unlawful conduct.

89. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondent **Citibank, N.A.**, order rescission of any collection obligation arising from unverified claims, order disgorgement of any amounts collected or enforced, and restore Petitioner to the position he would have occupied absent Respondents' unlawful conduct.

**COUNT VIII — VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT, Fla. Stat. § 559.55 et seq. (Against Respondents Ras LaVrar, LLC and its individual attorneys of record; ARS National Services, Inc.; Mccarthy, Burgess & Wolff, Inc.)**

90. Petitioner re-alleges paragraphs 22 through 34 as if fully set forth herein.

91. Respondents **Ras LaVrar, LLC and its individual attorneys of record, ARS National Services, Inc., and McCarthy, Burgess & Wolff, Inc**. are each "debt collectors" as defined by Fla. Stat. § 559.55(7).

92. **Ras LaVrar, LLC and its individual attorneys of record**, **ARS National Services, Inc.**, and **McCarthy, Burgess & Wolff, Inc.** violated Fla. Stat. § 559.72(7) by willfully communicating with Petitioner with such frequency as to harass Petitioner, including multiple written contacts across coordinated entities pursuing the same unvalidated alleged debt simultaneously without chain of title or proof of ownership.

93. Respondent **Ras LaVrar, LLC** violated Fla. Stat. § 559.72(7) by communicating with Petitioner's father at a separate address, disclosing the existence of the alleged debt to a non-party family member without authorization.

94. **Ras LaVrar, LLC and its individual attorneys of record**, **ARS National Services, Inc**., and **McCarthy, Burgess & Wolff, Inc**. violated Fla. Stat. § 559.72(9) by asserting the existence of a legal right to collect an alleged debt when such right does not exist in law or in fact, specifically by pursuing collection without verified chain of title, board-authorized agency, or authenticated proof of ownership of the alleged obligation.

95. **Ras Lavrar** continued collection activity by filing the underlying civil action on December 24, 2024, notwithstanding the pending cease and desist acknowledged in the October 9, 2024 **McCarthy** letter, in willful violation of Fla. Stat. § 559.72(7).

96. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents and award Petitioner actual damages, statutory damages

pursuant to Fla. Stat. § 559.77(2), punitive damages for willful violations, and reasonable attorney's fees and costs pursuant to Fla. Stat. § 559.77(2).

**COUNT IX — VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. § 501.201 et seq. (Against Respondents Citibank, Ras LaVrar, LLC and its individual attorneys of record; ARS National Services, Inc.; Mccarthy, Burgess & Wolff, Inc.)**

97. Petitioner re-alleges paragraphs 22 through 44 as if fully set forth herein.

98. At all relevant times, **Ras LaVrar, LLC and its individual attorneys of record**, **ARS National Services, Inc**., and **McCarthy, Burgess & Wolff, Inc**. were engaged in trade or commerce within the State of Florida within the meaning of Fla. Stat. § 501.203(8).

99. **Citibank**, **Ras LaVrar, LLC and its individual attorneys of record, ARS National Services, Inc., and McCarthy, Burgess & Wolff, Inc**. engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Fla. Stat. § 501.204, including:

a. **Ras LaVrar, LLC and its individual attorneys of record, ARS National Services, Inc., and McCarthy, Burgess & Wolff, Inc**. pursuing collection of an alleged debt through multiple coordinated entities simultaneously, none of whom produced chain of title, assignment documentation, or authenticated proof of ownership, creating a false impression that the alleged debt was validly owed and legally collectible;

b. **Citibank** furnished materially inaccurate information to consumer reporting agencies creating a false impression of Petitioner's financial status and obligations, causing Petitioner to be denied credit by BMW Financial Services and US Bank;

c. **Citibank, Ras LaVrar, LLC and its individual attorneys of record, ARS National Services, Inc., and McCarthy, Burgess & Wolff, Inc**. provided only billing statements in response to debt validation requests while simultaneously asserting the right to collect and institute legal proceedings, constituting a deceptive practice in the consumer marketplace;

d. **Ras Lavrar** filed the underlying civil action on December 24, 2024 following acknowledgment of Petitioner's cease and desist demand on October 9, 2024, using the judicial process as a mechanism of coercion rather than legitimate legal redress, constituting an unfair practice under Fla. Stat. § 501.204;

e. **Citibank** simultaneously marketed new credit products to Petitioner during the pendency of the collection action, creating irreconcilably contradictory representations regarding Petitioner's creditworthiness and the legitimacy of the alleged delinquency;

100. Petitioner affirmatively exercised opt-out rights with **Citibank** pursuant to the privacy notice requirements of the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq., directing **Citibank** not to share Petitioner's nonpublic personal financial

information with non-affiliated third parties. Notwithstanding Petitioner's opt-out election, **Citibank** shared Petitioner's financial information with multiple successive collection entities. This sharing of Petitioner's financial information in contravention of Petitioner's opt-out election constitutes an unfair and deceptive practice under Fla. Stat. § 501.204, in violation of Petitioner's reasonable expectation of financial privacy.

101. As a direct and proximate result of Respondents' unfair and deceptive acts and practices, Petitioner has suffered actual damages including denial of credit applications with BMW Financial Services and US Bank, loss of real property transfer opportunity, reputational harm, and financial hardship in amounts to be determined at trial.

102. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents for violations of Fla. Stat. § 501.204, award Petitioner actual damages, and award reasonable attorney's fees and costs to Petitioner as the prevailing party pursuant to Fla. Stat. § 501.2105.

**COUNT X — COMMON LAW FRAUD (Against Respondents Citibank, Ras LaVrar, LLC and its individual attorneys of record; ARS National Services, Inc.; Mccarthy, Burgess & Wolff, Inc.)**

103. Petitioner re-alleges paragraphs 22 through 44 as if fully set forth herein.

104. Common law fraud under Florida law requires: a false statement of material fact; knowledge that the statement was false when made or reckless disregard for its

truth; intent to induce reliance; justifiable reliance; and resulting damages. Johnson v. Davis, 480 So. 2d 625 (Fla. 1985). Each false statement below is pleaded with the particularity required by Federal Rule of Civil Procedure 9(b).

105. Respondents made the following false statements of material fact:

a. **Ras Lavrar, LLC and its individual attorneys of record** — False Representation of Right to Collect, November 6, 2024: By letter dated November 6, 2024, **Ras LaVrar, LLC** represented to Petitioner that it had the legal right to collect the alleged **Citibank** debt. This representation was false. At the time the letter was sent, **Ras LaVrar** possessed no chain of evidence establishing ownership of or authority to collect the alleged debt, no authenticated assignment documentation, and no board resolution authorizing it to act on **Citibank**'s behalf. **Ras LaVrar** knew or recklessly disregarded that it could not establish the legal right to collect at the time this representation was made;

b. **McCarthy, Burgess & Wolff** — False Representation of Adequate Validation, October 9, 2024: By letter dated October 9, 2024, **McCarthy, Burgess & Wolff** acknowledged Petitioner's debt validation request and represented that it had responded to that request. This representation was false in that **McCarthy** admitted providing only credit card statements and a cardholder agreement; documents that do not constitute valid debt validation because they do not establish chain of evidence, ownership, or authenticated standing to collect.

**McCarthy** made this representation knowing it had not provided adequate validation while simultaneously asserting the right to collect and the right to continue collection proceedings. **McCarthy** sent other letters dated August 26, 2024, September 4, 2024, October 9, 2024;

c. **Ars National Services** — False Representations of Right to Collect, April through August 2024: By letters dated April 23, 2024, June 3, 2024, June 29, 2024, and August 26, 2024, **ARS National Services** represented to Petitioner that it had the right to collect the alleged **Citibank** debt. These representations were false at the time each letter was sent. **ARS National Services** possessed no chain of evidence, no assignment documentation, and no authenticated proof of ownership establishing the right to collect;

d. **Ras Lavrar, LLC** — False Representation of Standing to Institute Legal Proceedings, December 24, 2024: By filing the underlying civil action in case number 24003778SCAXMX on December 24, 2024, **Ras LaVrar** represented through its filing that it had standing to institute the collection action on behalf of **Citibank, N.A.** This representation was false. Under IndyMac Bank v. Boyd, 880 N.Y.S.2d 224 (2009), standing must be established at commencement. **Ras LaVrar** possessed no authenticated chain of evidence or board-authorized agency establishing standing at the time of filing, a fact Petitioner raised before the court and which was denied without hearing;

e. **Citibank, N.A.** — False Credit Reporting Representations, Multiple Dates: **Citibank** furnished to **TransUnion**, **Equifax**, and **Experian** materially false information regarding the alleged debt including:

i. a Date of First Delinquency reported as August 2023 on the May 15, 2024 **Equifax** report and as September 1, 2023 on the February 17, 2025 **Equifax** report, two different dates for the same event on the same bureau;

ii. account closure dates reported as blank on the May 2024 **Equifax** report, October 1, 2023 on the February 2025 **Equifax** report, October 24, 2023 on **TransUnion**, and between December 2023 and February 2024 on the March 25, 2024 **Experian** report, four materially different dates; and

iii. a high balance of $6,019 on a $3,900 credit limit account without explanation or basis. **Citibank** knew or recklessly disregarded that these representations were materially false at the time they were furnished to the consumer reporting agencies;

f. **Citibank, N.A.** — Contradictory Representations Regarding Petitioner's Creditworthiness: During the same period in which **Citibank** maintained a collection action against Petitioner characterizing him as a delinquent debtor, **Citibank** transmitted solicitation letters offering Petitioner new credit products. These simultaneous and irreconcilably contradictory representations, that Petitioner was both a delinquent debtor subject to collection and a creditworthy consumer eligible for new credit, establish that at least one of these

representations was necessarily false at the time it was made. **Citibank** made both representations knowingly.

106. Each false representation identified above was made with knowledge of its falsity or with reckless disregard for the truth, satisfying the scienter element under Johnson v. Davis, 480 So. 2d 625 (Fla. 1985). As established in Adams v. Whitfield, 290 So. 2d 49, 51 (Fla. 1974), legal malice may be inferred from lack of probable cause and from deliberate conduct without reasonable cause, both of which are established by the documented pattern of representations made without chain of evidence, authenticated ownership, or valid standing.

107. Each false representation was made with the intent to induce Petitioner to pay the alleged debt, to refrain from disputing it, or to acquiesce in collection proceedings and any resulting judgment.

108. Petitioner suffered the following damages as a direct and proximate result of Respondents' fraudulent representations: entry of a judgment obtained through false representations of standing; denial of credit applications from BMW Financial Services on four occasions in March 2026 and from US Bank on multiple occasions in February 2025; loss of a real property transfer opportunity as a result of threats of judgment enforcement communicated in connection with collection proceedings; damage to creditworthiness; emotional distress; reputational harm; and financial hardship, all in amounts to be determined at trial.

109. Respondents fraudulent conduct was deliberate, planned, and sentient entitling Petitioner to punitive damages. Under Adams v. Whitfield, 290 So. 2d 49, 51 (Fla.

1974), punitive damages may be awarded based upon legal malice which may be inferred from gross negligence indicating a wanton disregard for the rights of others, a standard satisfied by the documented pattern of false representations made without chain of evidence across multiple entities and multiple years.

110. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents and award Petitioner actual damages, punitive damages pursuant to Adams v. Whitfield and the Florida common law of fraud, and such further relief as this Court deems just and proper.

**COUNT XI — MALICIOUS PROSECUTION (Against Respondent Ras LaVrar, LLC and its individual attorneys of record)**

111. Petitioner re-alleges paragraphs 22 through 26 as if fully set forth herein.

112. Florida recognizes malicious prosecution for wrongful civil proceedings. The elements are: commencement of a civil proceeding; at the instigation of the defendant; without probable cause; with malice; termination of the proceeding in plaintiff's favor; and resulting damages. Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352 (Fla. 1994).

113. Respondents commenced the underlying civil proceeding against Petitioner by filing 24003778SCAXMX on December 24, 2024.

114. Respondents lacked probable cause to institute the underlying proceeding. At the time of filing, Respondents possessed no chain of evidence establishing ownership of the alleged debt, no authenticated assignment documentation, no board resolution authorizing the litigation, and no verified accounting establishing the

amount claimed. A filing made without these foundational elements is objectively unreasonable and constitutes commencement without probable cause.

115. Malice is established through two independent grounds. First, under Adams v. Whitfield, 290 So. 2d 49, 51 (Fla. 1974), legal malice may be inferred entirely from a lack of probable cause, which is established by the complete absence of chain of evidence at the time of filing. Second, the scheme was malicious, sentient, planned, and deliberate within the meaning of Cox v. Burke, 706 So. 2d 43, 47 (Fla. 5th DCA 1998) and Tramel v. Bass, 672 So. 2d 78, 85 (Fla. 1st Dist. 1996), as evidenced by the coordinated conduct of multiple entities pursuing collection simultaneously without standing, and the filing of the underlying action on December 24, 2024 after acknowledging Petitioner's cease and desist demand on October 9, 2024.

116. The proceeding terminated in Ras Lavrar's favor within the meaning of this claim as follows:

a. The underlying proceeding was fundamentally defective from commencement due to absence of standing.

b. The Default Final Judgment entered on October 15, 2025 was entered without subject matter jurisdiction due to absence of standing at commencement under IndyMac Bank v. Boyd, 880 N.Y.S.2d 224 (2009). A proceeding commenced without probable cause and producing no valid evidentiary basis for the claimed obligation does not constitute a legitimate adjudication on the merits.

117. As a direct and proximate result of Respondents' malicious prosecution, Petitioner suffered actual damages including entry of a defective judgment, loss of real property transfer opportunity, damage to creditworthiness, emotional distress, reputational harm, and financial hardship. Respondents' conduct warrants punitive damages. Under Adams v. Whitfield, 290 So. 2d 49, 51 (Fla. 1974), punitive damages may be awarded based on legal malice inferred from lack of probable cause and from gross negligence indicating a wanton disregard for the rights of others. The deliberate filing of collection actions without chain of evidence, the coordination of multiple entities in pursuit of the same unverified obligation, and the systematic exploitation of judicial process to obtain judgments through procedural default rather than evidentiary proof satisfies this standard.

118. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents and award Petitioner actual damages and punitive damages for malicious prosecution pursuant to Alamo Rent-A-Car, Inc. v. Mancusi, Adams v. Whitfield, Cox v. Burke, and Tramel v. Bass, and such further relief as this Court deems just and proper.

**COUNT XII — ABUSE OF PROCESS (Against Respondents Ras LaVrar, LLC and its individual attorneys of record)**

119. Petitioner re-alleges paragraphs 22 through 26 as if fully set forth herein.

120. Abuse of process involves the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed. For the cause of action to exist there must be a use of process for an immediate purpose other than

that for which it was designed. Bothmann v. Harrington, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984).

121. Legal malice is presumed to exist if the plaintiff establishes that process has been used for an improper purpose. Legal malice generally means deliberate conduct without reasonable cause. Adams v. Whitfield, 290 So. 2d 49 (Fla. 1974); Bothmann v. Harrington, 458 So. 2d 1163 (Fla. 3d DCA 1984).

122. Respondents used the civil legal process in case number 24003778SCAXMX for the following improper purposes, each of which constitutes a use of process for an immediate purpose other than that for which it was designed:

a. To obtain a default judgment against Petitioner without producing chain of evidence, authenticated ownership, or any evidentiary basis for the claimed obligation; using judicial process not to adjudicate a legitimate claim but to obtain a coercive enforcement tool through procedural default;

b. To use the threat of judgment enforcement, including wage garnishment, bank account levy, and asset seizure, to compel payment of an unverified alleged debt that Respondents could not establish through legitimate evidentiary means, thereby using legal process as a debt collection mechanism rather than a dispute resolution mechanism;

c. To impair Petitioner's ability to receive transfers of real property through the coercive effect of a threatened judgment lien, as evidenced by a family member's decision to decline a property transfer due to the collection threats;

using legal process to achieve a property-related result not sought in the pleadings;

d. To file the underlying civil action on December 24, 2024, a federal holiday, after acknowledging Petitioner's cease and desist demand on October 9, 2024, for the specific and deliberate purpose of maximizing the probability of default by initiating legal process at a time calculated to minimize Petitioner's ability to respond, using process for the immediate purpose of procedural ambush rather than legitimate legal redress. This conduct is deliberate, sentient, and planned within the meaning of Cox v. Burke, 706 So. 2d 43, 47 (Fla. 5th DCA 1998).

123. As a direct and proximate result of Respondents' abuse of process, Petitioner suffered actual damages including a defective judgment enforceable against Petitioner, loss of real property transfer opportunity, damage to creditworthiness, emotional distress, reputational harm, and financial hardship.

124. Respondents' conduct warrants punitive damages under Adams v. Whitfield, 290 So. 2d 49, 51 (Fla. 1974), as legal malice inferred from deliberate conduct without reasonable cause and from wanton disregard of Petitioner's rights supports a punitive damages award. The conduct of filing on Christmas Eve after cease and desist acknowledgment constitutes the paradigm of deliberate, sentient, planned conduct justifying punitive damages.

125. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents and award Petitioner actual damages and punitive damages

for abuse of process pursuant to Bothmann v. Harrington, Adams v. Whitfield, Cox v. Burke, and Tramel v. Bass, and such further relief as this Court deems just and proper.

**COUNT XIII — VIOLATIONS OF THE TRUTH IN LENDING ACT, 15 U.S.C. § 1601 et seq. (Against Respondent Citibank)**

126. Petitioner re-alleges paragraphs 32 through 38 as if fully set forth herein.

127. The Truth in Lending Act and its implementing regulation, Regulation Z, 12 C.F.R. § 1026 et seq., require creditors to provide accurate and timely disclosures regarding account balances, finance charges, and billing error resolution procedures.

128. Respondent violated 15 U.S.C. § 1638 by failing to disclose the basis for balance increases on a closed, charged-off account, leaving Petitioner unable to verify the calculation of the alleged amount owed.

129. Citibank unilaterally reduced Petitioner's credit limit without providing the 45-day advance written notice required by Regulation Z, 12 C.F.R. § 1026.9(c)(2)(vi). Petitioner's credit reports reflect the reduced credit limit. Petitioner received no written notice from Citibank disclosing the reduction, its basis, or its effect on Petitioner's account terms prior to the reduction taking effect. The undisclosed reduction artificially increased Petitioner's reported credit utilization ratio, damaging Petitioner's credit profile without the disclosure required by law.

130. Respondent **Citibank** violated 15 U.S.C. § 1666 by failing to properly resolve Petitioner's billing error dispute in accordance with the statutory procedure, including:

   a. Failing to acknowledge the billing error dispute within the required thirty-day period;

   b. Failing to either correct the billing error or provide a written explanation of the creditor's position within two billing cycles;

   c. Continuing to report the disputed amount as delinquent to consumer reporting agencies during the pendency of the unresolved billing error dispute, in violation of 15 U.S.C. § 1666(e).

131. Pursuant to 15 U.S.C. § 1640, Petitioner is entitled to actual damages, statutory damages in an amount equal to twice the finance charge in connection with the transaction, and reasonable attorney's fees and costs.

132. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondent and award Petitioner actual damages, statutory damages pursuant to 15 U.S.C. § 1640, and reasonable attorney's fees and costs.

## VI. HARM SUFFERED

133. Prior to Respondents' conduct, Petitioner operated a thriving entrepreneurial business and maintained a credit profile sufficient to support business operations, real estate investment activity, and personal financial stability. As a direct and proximate result of Respondents' collective conduct, including the wrongful collection actions, inaccurate credit reporting, and the resulting destruction of

Petitioner's creditworthiness and business operations, Petitioner has suffered a complete collapse of his business income and financial standing.

134. Petitioner has been forced to rely on government assistance programs to meet basic living expenses, a circumstance directly and proximately caused by Respondents' unlawful conduct and one that would not have occurred but for that conduct. The loss of business income, the destruction of Petitioner's credit profile, and the resulting inability to access financing, enter into commercial transactions, or pursue the real estate investment and development activities that formed the foundation of Petitioner's livelihood represent the full measure of the economic harm Respondents have caused.

135. As a direct and proximate result of the acts and omissions of all Respondents, Petitioner has suffered the following harms:

a. Unlawful debt collection action prosecuted without verified standing, board-authorized agency, or valid service of process;

b. Entry of a judgment of $4,720.96 enforceable against Petitioner without evidentiary support;

c. Invasion of privacy and third-party disclosure through service on a non-party family member;

d. Inaccurate negative credit reporting including post-charge-off balance increases, missing and inconsistent delinquency dates, payment grid contradictions, and blank or inconsistent high credit and credit limit fields;

e. Failure by consumer reporting agencies to conduct reasonable reinvestigation of disputed information;

f. Denial of access to credit and financing directly resulting from inaccurate reporting;

g. Reputational harm and defamation through publication of false financial information to third parties;

h. Loss of real property transfer opportunity due to threats of asset seizure communicated in connection with the collection proceedings;

i. Emotional distress, financial hardship, loss of economic opportunity, and impairment of business operations;

j. Violations of the Florida Consumer Collection Practices Act through harassment, assertion of nonexistent collection rights, and unauthorized communications in connection with unvalidated alleged debts.

k. Denial of credit applications with BMW Financial Services and US Bank as a direct and proximate result of inaccurate negative information furnished and maintained by Respondents on Petitioner's consumer credit reports.

## VII. PRAYER FOR RELIEF

136. WHEREFORE, Petitioner respectfully requests that this Court grant the following relief:

a. Order **Citibank**, N.A to provide full debt validation including the original signed contract, complete verified accounting, and authenticated chain of title, or immediately cease all collection activity and negative credit reporting;

b. Order **TransUnion**, **Equifax**, and **Experian** to immediately delete all negative information furnished by **Citibank** in connection with the disputed debt, including correction of all inaccurate tradeline data identified in this complaint;

c. Award Petitioner actual damages against all Respondents in an amount to be determined at trial;

d. Award Petitioner statutory damages of $1,000 per Respondent per action under 15 U.S.C. § 1692k(a)(2)(A);

e. Award Petitioner statutory damages of not less than $100 and not more than $1,000 per willful violation per Respondent under 15 U.S.C. § 1681n;

f. Award Petitioner treble damages pursuant to 18 U.S.C. § 1964(c) for RICO violations;

g. Award Petitioner punitive damages for willful violations of the FDCPA and FCRA;

h. Award Petitioner reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), 15 U.S.C. § 1681n(a)(3), and 18 U.S.C. § 1964(c);

i. Refer **Ras LaVrar, LLC and its individual attorneys of record** and **Citibank, N.A.** to the Department of Justice for investigation of potential violations of 18 U.S.C. § 1341 and 18 U.S.C. § 1343;

j. Award Petitioner statutory damages pursuant to Fla. Stat. § 559.77(2) for willful violations of the Florida Consumer Collection Practices Act by each collection Respondent;

k. Grant any further relief this Court deems just, equitable, and proper.

Respectfully Submitted,

______/s/ David Battle________

David D. Battle, Jr.
855 Josephine Street
Brooksville, Florida [34601]
Tel: 813-563-7090
Davidbattle1225@gmail.com
Petitioners, Pro Se

Date: ______October 5, 2026________

## CERTIFICATE OF SERVICE

I, David D. Battle, Jr., hereby certify that on October 5, 2026, a true and correct copy of the foregoing filing, was served upon each Respondent at the address listed below via U.S. Marshal, United States Certified Mail, First Class, postage prepaid, return receipt requested, or via the Court's CM/ECF electronic filing system where counsel has appeared.

1. CITIBANK, N.A.
   Respondent — Original Creditor / Named Plaintiff in State Court
   5800 S Corporate Pl
   Sioux Falls, SD 57108

2. RAS LAVRAR, LLC
   Respondent — Debt Collector / Collection Law Firm
   1133 S University Dr
   Plantation, FL 33324

3. FLYNN LAVRAR
   service@rasLaVrar.com
   1133 S University Dr,
   Plantation, FL 33324

4. DREW LINEN, ESQ.
   service@rasLaVrar.com
   1133 S University Dr,
   Plantation, FL 33324

5. SACHA C. DIXON, ESQ.
   service@rasLaVrar.com
   1133 S University Dr,
   Plantation, FL 33324

6. CYDNEI NETTLES, ESQ.
   service@rasLaVrar.com
   1133 S University Dr,
   Plantation, FL 33324

7. JENNIFER K. KLEIN, ESQ.
   service@rasLaVrar.com
   1133 S University Dr,
   Plantation, FL 33324

8. ANDREW S. BRESALIER PEREZ, ESQ.
service@rasLaVrar.com
1133 S University Dr,
Plantation, FL 33324

9. ELIAS LEONARD DSOUZA, ESQ.
service@rasLaVrar.com
1133 S University Dr,
Plantation, FL 33324

10. ARS NATIONAL SERVICES, Inc.
Respondent — Debt Collector
7954 Baymeadows Way
Jacksonville, FL 32256

11. Mccarthy, Burgess & Wolff, Inc.
Respondent — Debt Collector / Collection Law Firm
26000 Cannon Road
Cleveland, OH 44146

12. TRANS UNION LLC
Respondent — Consumer Reporting Agency
P.O. Box 2000
Chester, PA 19016
Registered Agent: Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301

13. EQUIFAX INFORMATION SERVICES, LLC
Respondent — Consumer Reporting Agency
1550 Peachtree Street NW
Atlanta, GA 30309
Registered Agent: Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301

14. EXPERIAN INFORMATION SOLUTIONS, Inc.
Respondent — Consumer Reporting Agency
475 Anton Blvd.
Costa Mesa, CA 92626
Registered Agent: C T Corporation System
1200 South Pine Island Road
Plantation, FL 33324

Respectfully Submitted,

/s/ David Battle

David D. Battle, Jr.
855 Josephine Street
Brooksville, Florida [34601]
Tel: 813-563-7090
Davidbattle1225@gmail.com